IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COLLETTE DAVIS, et al., : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 09-5520 |
| ABINGTON MEMORIAL HOSPITAL, et al., : | |
| Defendants. : | |
| SUSAN FRATTAROLA, et al., : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 09-5533 |
| MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA, et al., : | |
| Defendants. : | |
| KENNETH LYNN, et al., : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 09-5548 |
| ARIA HEALTH SYSTEM, et al., : | |
| Defendants. : | |
| KENNETH LYNN, et al., : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 09-5549 |
| JEFFERSON HEALTH SYSTEM, INC., et al., : | |
| Defendants. : | |

|  |  |
|---|---|
| CASSANDRA RUFF, et al., : | |
| : | |
| Plaintiffs, : | |
| v. : | CIVIL NO. 09-5550 |
| : | |
| ALBERT EINSTEIN : | |
| HEALTHCARE NETWORK, et al., : | |
| : | |
| Defendants. : | |
| : | |
| JOHN DUNCHESKIE, et al., : | |
| : | |
| Plaintiffs, : | |
| v. : | |
| : | CIVIL NO. 09-5551 |
| TEMPLE UNIVERSITY HEALTH SYSTEM, et al., : | |
| : | |
| Defendants. : | |

## MEMORANDUM ORDER & OPINION

**RUFE, J.**                                                                            September 8, 2011

In these six related putative collective and class actions, Plaintiffs claim that their employers, various hospital systems and their affiliates, located in and around the Philadelphia metropolitan area, violated federal and state laws by failing to pay them for all hours they worked. Defendants' joint motion to dismiss, Plaintiffs' joint opposition thereto, and Defendants' joint reply are before the Court.[1] This Motion has been fully briefed and is now ripe for disposition.

---

[1] Pursuant to Federal Rule of Civil Procedure 78, no oral argument was held.

# I. BACKGROUND

A.    PROCEDURAL BACKGROUND

In November 2009, the Plaintiffs in each of these six cases filed parallel complaints against six agglomerations of health-care providers in this Court and in the Philadelphia County Court of Common Pleas.[2]  Both the state and federal complaints alleged that Plaintiffs were not properly paid by their employers for all time that they allegedly worked.  The complaints filed in this Court brought only federal claims; the state court complaints included only state law claims.  Although maintained as separate actions, the allegations in each set of complaints were essentially identical.

In December 2009, the Defendants in each of these actions removed the state court actions to this Court on grounds that the asserted state law claims fell within the scope of Section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA").[3]  Three of the six defendants also relied upon the express preemption provisions of ERISA Section 514(a),[4] and three defendants removed on grounds that Plaintiffs' Wage Payment and Collection Law ("WCPL")[5] and breach-of-contract claims were preempted by, and removable under, Section 301

---

[2] As noted in Cavallaro v. UMass Mem. Health Care Inc., No. 09-40152, 2011 WL 2295023 (D. Mass. June 8, 2011), Plaintiffs' counsel has filed at least twenty-nine substantially identical versions of the complaint in this case against different agglomerations of health-care providers nationwide.  Id. at * 6.

[3] 29 U.S.C. § 1001, et seq.

[4] See Lynn v. Jefferson Health Sys., No. 09-6086, 2010 WL 3656634, at * 4 (E.D. Pa. Sept. 15, 2010) ("The Court . . . finds that, due to the inextricability of the ERISA benefit plans from the relationship between the parties and the requested remedy, Plaintiffs' state claims are preempted).

[5] 43 Pa. Cons. Stat. § 260.1, et seq.

of the Labor Management Relations Act ("LMRA").[6] Plaintiffs subsequently moved to remand. The Court denied Plaintiffs' motions, concluding that ERISA preempted all Plaintiffs' state law claims in their entirety, and that, in the three cases which raised the issue,[7] Section 301 of the LMRA preempted Plaintiffs WPCL and breach-of-contract claims.[8]

After consolidating their state and federal claims into a single complaint, Plaintiffs in each case filed Amended Complaints on October 15, 2010. Paying little heed to the Court's holdings regarding ERISA and the LMRA's preemptive effect, Plaintiffs reassert all state law claims in the pending eighteen-count Amended Complaints (each of which is identical in all material respects). Thus, Plaintiffs maintain that they were denied applicable premium pay and overtime in violation of the Fair Labor Standards Act ("FLSA"),[9] the Pennsylvania Minimum Wage Act ("PMWA"),[10] and the WPCL. Plaintiffs also assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO")[11] and common law for the same conduct. Finally, Plaintiffs allege that Defendants failed to keep accurate records of employees' hours worked and breached their fiduciary duties in violation of ERISA and Pennsylvania law.[12]

Defendants responded by jointly moving to dismiss all pending Amended Complaints,

---

[6] 29 U.S.C. § 185, et seq.

[7] See Lynn v. Jefferson Health Sys., No. 09-5549, Ruff v. Albert Einstein Healthcare Network, 09-5550, and Frattarola v. Mercy Health Sys., 09-5533.

[8] See Lynn, 2010 WL 3656634 at *4–6.

[9] 29 U.S.C. §§ 207 & 216(b).

[10] 43 Pa. Stat. Ann. § 733.01, et. seq.

[11] 18 U.S.C. §§ 1961–68.

[12] See 43 P.S. § 333.108.

pursuant to Federal Rules of Procedure 12(b)(6) and 12(b)(1).[13] For purposes of this joint motion, the Parties rely upon and reference the Amended Complaint in Ruff, et al. v. Albert Einstein Healthcare Network, et al.[14] as representative of all the Amended Complaints filed in these actions.[15] The Court will do likewise.

B.  FACTUAL BACKGROUND

The three named Plaintiffs are employed by one or more of the Defendants (the complaint does not specify) and are hourly, non-exempt workers.[16] They seek to represent a class of some 7,100 similarly situated individuals.[17]

---

[13] Ruff, doc. no. 156.

[14] Doc. no. 124.

[15] See Defs.' Mem. at 3 n.3 and Ex. A (chart identifying the corresponding paragraphs of the Amended Complaints in each of the actions in which the Joint Motion was filed).

[16] Am. Compl. ¶ 193 ("Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA.")

[17] According to Plaintiffs, this class includes:

[H]ourly employees working at Albert Einstein Healthcare Network's facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, transport nurses, nurse aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse care managers, nurse interns, nurse practitioners, nurse aides, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, occupational therapists, occupational therapy assistants, physical therapists, physical therapy assistants, radiation therapists, staff therapists, angiotechnologists, x-ray technicians, CAT scan technicians, mammographers, MRI technologists, sleep technologists, surgical technologists, radiographers, phlebotomists, respiratory technicians, respiratory care specialists, respiratory care practitioners, clinical coordinators, medical assistants, home care

The named Plaintiffs allege that they are employees of the "Albert Einstein Health Care Network," which they define as an association of 86 entities and two individuals.[18] These entities come in three forms: (1) the "Named Defendants," a group of "related organizations" that includes Defendants Albert Einstein Healthcare Network,[19] Albert Einstein Medical Center, Elkins Park Hospital, Germantown Hospital, Albert Einstein Medical Center Employees Retirement Plan, and Albert Einstein Healthcare Network Tax Sheltered Annuity Plan, and two officers of Albert Einstein Healthcare Network;[20] (2) a group of twenty-one "Health Centers"

---

nurses, home health aides, clinical case managers, midwives, and other health care workers.

Am. Compl. ¶ 137.

[18] Am. Compl. ¶ 17 ("Together, the Named Defendants, the Health Centers, and the Affiliates are referred to as "Albert Einstein Healthcare Network" or "defendants."). The five other groups of defendants include: the "Mercy Health Defendants," which includes seven entities, three individuals, and approximately 100 facilities and centers allegedly owned or affiliated with the entities and individuals; the "Jefferson Health Defendants," which includes 28 entities, two individuals, and approximately 368 facilities and centers allegedly owned or affiliated with the entities and individuals; the "Aria Health Defendants," which includes four entities and two individuals and approximately 60 facilities and centers allegedly owned or affiliated with the entities and individuals; the "Temple University Health Center Defendants" which includes 12 entities and two individuals and approximately 76 facilities and centers allegedly owned or affiliated with the entities and individuals;" and the "Abington Memorial Health Defendants" which includes six entities and two individuals and approximately 210 facilities and centers allegedly owned or affiliated with the entities and individuals.

[19] Presumably, this Named Defendant is a separate entity from the group of "Named Defendants, the Health Centers, and the Affiliates" which Plaintiffs refer to interchangeably as "Albert Einstein Healthcare Network" or "Defendants." Plaintiffs do not distinguish between these two identically named entities in their Amended Complaint, further complicating the task of interpreting an already opaque complaint.

[20] Am. Compl. ¶ 14. The two officers are Barry R. Freedman, the President and CEO of Albert Einstein Healthcare Network, and Lynne Kornblatt, the Vice President of Human Resources for Albert Einstein Healthcare Network.

(presumably owned by the Named Defendants);[21] and (3) a group of fifty-nine "Affiliates."[22]

Plaintiffs contend that the Defendants maintained three illegal work and pay policies ("the Unpaid Work Policies"):[23] (1) the "Unpaid Meal Break Policy," pursuant to which Defendants automatically took a daily half-hour deduction from Plaintiffs' paychecks for a meal break, even though Plaintiffs often had to work through those breaks;[24] (2) the "Unpaid Preliminary and Postliminary Work Policy," pursuant to which Defendants did not pay Plaintiffs for work performed before and after their shifts;[25] and the "Unpaid Training Policy" pursuant to which Defendants did not pay Plaintiffs for time spent at compensable training sessions.[26]

## II. LEGAL STANDARD

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, the Court must accept a plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff.[27] Courts are not, however, bound to

---

[21] Am. Compl. ¶ 5.

[22] Am. Compl. ¶ 16.

[23] Am. Compl. ¶ 117.

[24] Am. Compl. ¶¶ 118–38.

[25] Am.Compl. ¶¶ 141–44.

[26] Am. Compl. ¶¶ 145–48.

[27] Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Defendants also to move to dismiss on the basis of 12(b)(1), arguing that the Named Plaintiffs lack statutory standing. The Third Circuit has explained that "A dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim." Baldwin v. University, 636 F.3d 69, 73 (3d Cir. 2011). Because this is true, the Court need not analyze this basis for dismissal under the 12(b)(1) standard.

accept as true legal conclusions couched as factual allegations,[28] or "accept as true unsupported conclusions and unwarranted inferences."[29] The Complaint must set forth "direct or inferential allegations [for] all the material elements necessary to sustain recovery under some viable legal theory."[30] And it must allege "enough facts to state a claim for relief that is plausible on its face."[31] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that the defendant acted unlawfully."[32]

### III. DISCUSSION

A.    FLSA CLAIMS

The basic prerequisite for any FLSA lawsuit is an employment relationship between the plaintiffs and defendant.[33] Thus, in a FLSA collective action, every defendant must have been the employer of at least one named plaintiff. The FLSA definition of employer is broad, and encompasses any entity that "directly or indirectly" employed the Plaintiffs.[34] To determine whether a particular entity is an employer, the court looks to the economic realities of the

---

[28] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).

[29] Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir.), cert. denied, 522 U.S. 977 (1997).

[30] See Twombly, 550 U.S. at 562 (citations and quotations omitted).

[31] Id. at 570.

[32] Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

[33] 29 U.S.C. §203(e)(1).

[34] 29 U.S.C. § 203(d); see also Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (instructing courts to construe the terms "employer" and "employee" expansively to effect Congress's remedial intent in enacting the FLSA).

particular work environment.[35] This test focuses on whether an employee is economically dependent on an employer, rather than on "technical concepts" of employment,[36] and permits an employee to have multiple employers that are simultaneously responsible for compliance with FLSA.[37]

Defendants contend, *inter alia*, that Plaintiffs have not sufficiently pled that any particular defendant is an "employer" under the FLSA. The Court agrees. The number of alleged employers listed in each complaint ranges from 66 to 218, with 86 entities and two individuals listed in the Ruff complaint.[38] That bounty of potential employers notwithstanding, Plaintiffs somehow fail to allege facts establishing a single employer-employee relationship.

For example, in Ruff, Plaintiffs allege that they are simultaneously the "employees" of 86 entities and two individuals. Nowhere, however, does the Complaint set forth basic information about the named Plaintiffs. Plaintiffs do not allege: to which of these 86 entities they reported each day; from whom they received their paycheck; information about who, specifically, set their rate of pay and other conditions of their employment; or who directly supervised their employment. Plaintiffs suggest that it is immaterial (1) for whom they actually performed

---

[35] Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 32 (1961); see also Donvan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985).

[36] Goldberg, 366 U.S. at 33; see also Zygowski v. Erie Morning Telegram, Inc., 298 F.2d 639, 641 (3d Cir. 1962).

[37] See Wright v. Lehigh Valley Hosp. & Health Network, No. 10-cv-431, 2011 WL 2550361, at * 2 (E.D. Pa. June 23, 2011) (Magistrate) ("The FLSA 'contemplates there being simultaneous employers who may be responsible for compliance with the FLSA.'") (quoting Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 965 (6th Cir. 1991).

[38] See supra n.15.

services during their employment; and (2) the actual relationship of their direct employer with the various Named Defendants, Healthcare facilities, and Affiliates specified in the complaint because all defendants are liable under either the joint-employer or single-employer theory of liability.

But Plaintiffs have taken the concept of "joint employer" several steps too far. A joint employment relationship can exist when employers are not "completely associated" with respect to the employment of individuals, or where one employer is controlled by another, or the employers are under common control.[39] Plaintiffs fail to allege that one or several entities jointly employ them, contending instead that 86 organizations—some of which are separately incorporated or organized—all benefit in some way from their labors, and that they, in turn, are "economically dependent" on each of those entities. Thus, according to Plaintiffs' theory, all of the defendants are all of their employers. The Amended Complaint, however, lacks any factual support to substantiate this conclusory assertion.

Although these 86 entities, while separate units, could be acting jointly to control the terms of Plaintiffs' employment, the Court cannot assess whether a joint-employer relationship exists without facts alleging the basic terms of the primary employment-employer relationship. Thus, Plaintiffs have put the cart before the horse: they fill the Amended Complaint with conclusory labels describing the relationships between the Defendants,[40] but never allege for

---

[39] 29 C.F.R. § 791.2(b).

[40] Named Plaintiffs do not allege any facts explaining the relationship between these facially independent entities. Instead, they rely almost entirely on labels: "corporate combine," Am. Compl. ¶¶ 44, "a single enterprise," Am. Compl. ¶ ¶ 34, 44, "alter ego," Am. Compl. ¶¶ 34, 48, and principal-agent, Am. Compl. ¶ 34 . These labels, however, are "mere legal conclusions." As such, they are not entitled to an assumption of truth. See Iqbal, 129 S. Ct. at

which of the 86 entities they actually worked or the nature of the relationship between those entities. And without facts alleging who exercised primary control over Defendants, the Court cannot embark on a joint-employer analysis.

Other Courts have reached the same conclusion. In Cavallaro v. UMass Memorial Health Care, Inc.,[41] a Massachusetts District Court rejected a substantially similar complaint alleging a joint-employer relationship.[42] The court faulted the plaintiffs for their failure to "allege when they began working, what position they [held], or which defendants supervise their daily work schedules . . . the location at which they work, what they do at work, or what tasks they perform." Similarly, in Nakahata v. New York-Presbyterian Healthcare System, Inc.,[43] a Southern District of New York Court, again analyzing a substantially similar complaint, concluded that "the complaints are deficient due to the failure to specify which entity, among the many named defendants, employed the respective plaintiffs. Certainly if one entity did not pay an employee for overtime, that is an insufficient basis for naming every other health care facility affiliated with the employer." Cavarallo and Nakahata are persuasive: were the Court to permit the Plaintiffs to proceed without identifying where they worked or in what capacity, Defendants would be forced to guess which of their many business relationships gave rise to FLSA liability.

The single-employer theory of liability is likewise of no help to Plaintiffs because of their

---

1950 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[41] No. 09-40152, 2011 WL 2295023 (D. Mass. Jun. 8, 2011).

[42] Id. at *5.

[43] No. 10-cv-2661, 2011 WL 321186 (S.D.N.Y. Jan. 28, 2011).

pleading deficiencies.[44] Under this theory, "nominally separate companies may be so interrelated that they constitute a single employer."[45] Plaintiffs' failure to identify that any single defendant as their employer is fatal. As Cavarallo explained, allegations about the plaintiffs' nominal employer are a prerequisite for single-employer theory:

> The single-employer theory of liability typically arises when one entity is a plaintiff's legal employer, but the plaintiff seeks to hold another entity liable because of corporate interrelation. [P]laintiffs have not alleged facts that establish that any one of the individual defendants is their nominal employer. Without the foundation for in the first instance identifying which defendant is plaintiffs' legal employer, it would serve no purpose to inquire into whether the . . . other corporate defendants are sufficiently interrelated so as to constitute one integrated employer.[46]

In short, in order to proceed on their FLSA claim, Plaintiffs must include basic information about the named Plaintiffs.[47] Without this information, the Court and the Defendants are unable to determine the extent to which any of the 86 entities and/or individuals could be

---

[44] The "single-employer" theory is distinct from the joint-employer" concept. "[A] finding that companies are 'joint employers' assumes in the first instance that companies are 'what they appear to be'—independent legal entities that have merely 'historically chosen to handle jointly . . . important aspects of their employer-employee relationship.'" NLRB v. Browning-Ferris Indus. of Pa., Inc., 691 F.2d 1117, 1122 (3d Cir. 1982) (quoting NLRB v. Checker Cab Co., 367 F.2d 692, 698 (6th Cir. 1966)). The single-employer theory, on the other hand, examines whether "separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise." NLRB v. Deena Artware, Inc., 361 U.S. 398, 401 (1960).

[45] Torres-Negron v. Merck & Co., Inc., 488 F.3d 34, 41 (1st Cir. 2007) (citing NLRB v. Browning-Ferris Indus. Inc., 91 F.2d 1117, 1122 (3d Cir. 1982).

[46] Cavarallo, 2011 WL 2295023 at *5.

[47] Specifically, the Court requires facts about which of the 86 entities they report each day, the relationship between their employer and the other entities, who directly supervised their employment, and any other information about who, specifically, set their rate of pay and other terms and conditions of employment.

liable, either as primary violators, or through any derivative liability theory.[48] The Amended Complaint is thus the antithesis of "notice" pleading, and must be dismissed.[49]

B.   ERISA CLAIMS

Counts Two and Three of Plaintiffs' Amended Complaint allege that because of the illegal work and pay policies, Defendants failed to keep accurate records of hours worked by plaintiffs in violation of ERISA § 209(a)(1), and breached its fiduciary duty under the Albert Einstein Medical Center Employees Retirement Plan and Albert Einstein Healthcare Network Tax Sheltered Annuity Plan.

---

[48] This dismissal applies to all Defendants, including the individuals listed in paragraph 14 of the Amended Complaint. A corporate officer, manager, supervisor, or participating shareholder may be named as a defendant in a FLSA cause of action where that individual is responsible in whole or in part for the alleged violation. See Donovan v. Agnew, 712 F.2d 1509, 1514 (1st Cir. 1983). The key consideration in determining individual liability is whether the individual has exerted sufficient control over significant aspects of the employer's employment policies. See Donovan v. Tavern Talent & Placements, 1986 WL 32746, at * 7 (D. Colo. Jan. 8, 1986).

Because Plaintiffs have failed to sufficiently allege facts plausibly demonstrating an employee-employer relationship, they have also failed to plausibly allege a connection to the individual defendants. "Without more specific factual allegations connecting the entity that employed plaintiffs to the entity for which the officers made employee compensation decisions," Plaintiffs cannot establish that either Barry Freedman or Lynne Kornblatt was their employer under FLSA. See Cavallaro, 2011 WL 2295023 at *6.

[49] As explained below, Plaintiffs will be granted leave to amend their Complaint. Plaintiffs are instructed to plead with greater clarity the following items: (1) the provision of FLSA under which they seek damages, specifically whether they seek minimum-wage injuries under § 206, or overtime shortages under § 207; (2) if Plaintiffs are asserting overtime claims, whether they are asserting "gap time" claims; (3) the legal relationships between every defendant listed in the complaint, specifically which defendants own any of the Named Defendants, Healthcare Facilities, or Affiliates, and whether any corporate hierarchy exists between the Defendants; (4) how any of the Defendants outside of a corporate hierarchy are liable under FLSA, if the named Plaintiffs did not actually perform work at those facilities.

Because Plaintiffs have failed to allege a FLSA violation, these claims also fail.[50] Without sufficient allegations establishing an employer-employee relationship, it is impossible to determine whether any of the defendants, named or otherwise, owed Plaintiffs a fiduciary duty, or had "sufficient control over the hours plaintiffs are deemed to have worked."[51] Further, absent any description of the terms of the ERISA plans to which Plaintiffs were subject,[52] it is impossible to

---

[50] See Cavarallo, 2011 WL 2295023 at * 7 ("Because plaintiffs' FLSA claim will be dismissed, the ERISA claims must also be dismissed, and the Court need not reach the merits of the claims."); Pruell v. Caritas Christi, No. 09-11466, 2010 WL 3789318, at * 4 (D. Mass September 27, 2010 ) ("Because the Plaintiffs have failed to adequately allege their FLSA claim, [Defendant] argues that they have also failed to adequately allege their ERISA claims. I agree.").

[51] See Manning v. Boston Med. Ctr. Corp., No. 09-11463, 2011 WL 796505, at * 2 (D. Mass Feb. 28, 2011) ("There is nothing in the complaint to plausibly suggest that the ERISA plan and its fiduciaries have control over the hours that plaintiffs are deemed to have worked.").

[52] Defendants in Fratarrola, Jefferson, and Aria attach the contested ERISA plans to their individual memoranda in support of the motion to dismiss, and argue that their employee-benefits plans do not create the type of fiduciary duty Plaintiffs posit to support their ERISA breach-of-fiduciary-duty claim. Because Plaintiffs' claims are premised upon and asserted against these benefits plans, the Court may consider the terms of these plans at the motion to dismiss stage. See In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir. 2010).

Plaintiffs' ERISA claim is premised on the contention that under the governing benefits plans, their employers owed a fiduciary duty to "credit or . . . investigate[] crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the plans." Am. Compl. ¶ 163. In Henderson v. UPMC, the Third Circuit held that absent specific plan language to the contrary, employers are not liable under ERISA for a failure to calculate benefits based on uncompensated hours worked. 640 F.3d 524, 529 (3d Cir. 2011). Thus, where plan language define benefits in terms of compensation, and where compensation is tied to wages actually *paid*, rather than wages *owed*, employers are not obligated to credit employees for "all hours worked" and the failure to credit those hours does not constitute a breach of fiduciary duty under ERISA. Id. See also Kuznyetsov v. West Penn Allegheny Health Sys., No. 09379, 2010 WL 597475, at * 5–6 (W.D. Pa. Feb. 16, 2010) (dismissing ERISA claims in a nearly identical case where the plan documents tied ERISA benefits to compensation paid and not to hours worked); DeSilvia v. N. Shore-Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 540 (E.D.N.Y. 2011) (same); Camesi v. Univ. of Pittsburgh Med. Ctr., et al., No. 09-187J, 2010 WL 235123, at * 1 (W.D. Pa. Jan. 11, 2010) (same).

determine whether it was "the responsibility of the ERISA plan to keep records, in the first instance, of the number of hours plaintiffs worked."[53]

C.   RICO CLAIMS

Plaintiffs also attempt to cast the Defendants' failure to provide full compensation as a RICO violation. Plaintiffs contend that the Defendants devised a scheme to underpay them, and that they furthered that scheme by mailing to the Plaintiffs misleading paychecks which led Plaintiffs to believe "defendants had included all compensable work time."[54]

To assert a valid RICO claim, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, and an injury to property or business resulting from the conduct.[55] "Racketeering Activity" refers to any one of the crimes listed as predicate acts by the statute.[56] These predicate acts include mail fraud, the criminal activity that Plaintiffs have alleged here.[57] Because fraud is the alleged predicate act, the heightened pleading requirements

---

The plan language in Frattarola, Jefferson, and Aria—which is similar to that at issue in Henderson—requires Plan Administrators to calculate benefits based on wages paid, not owed. Thus, even if Plaintiffs corrected the other deficiencies in their ERISA claims, Plaintiffs in these cases cannot state a Section 209 claim against Defendants, or a related claim that Defendants failed its fiduciary obligation to investigate and ensure contributions were being accurately provided to the fund on this basis.

[53] See Manning, 2011 WL 796505 at * 2 ("[T]here is no suggestion that it is the responsibility of the ERISA plan to keep records, in the first instance, of the number of hours plaintiffs worked. These matters have nothing to do with ERISA.").

[54] Am Compl. ¶¶ 66, 169.

[55] Sedima S.P.R.L. v. Imrex Co., 473 U.S. 279, 296 (1985) (Though RICO is primarily a criminal statute, 18 § U.S.C. 1964 permits a private right of action for "[a]ny person injured in his business or property" by a RICO violation.").

[56] 18 U.S.C. § 1961(1).

[57] See 18 U.S.C. § 1961(a).

of Federal Rule of Civil Procedure 9(b) apply.[58]

Plaintiffs' claim, which is deficient in several respects, fails chiefly because it does not adequately allege the predicate act of mail fraud. Mail fraud consists of (1) a scheme to defraud, (2) use of the mail or interstate wires to further that scheme, and (3) fraudulent intent.[59] Though the mailings need not constitute an essential element of the fraud or even contain a single misrepresentation, the mailing must be "incident to an essential part of the scheme, or a step in the plot."[60]

In a number of similar cases, courts have rejected nearly identical allegations for failure to properly allege mail fraud. As explained by Cavallaro v. UMass Memorial Health Care Inc.,[61] (in an opinion issued prior to the one cited above), mailing paychecks that inform the plaintiffs that they were undercompensated does not further the alleged fraud:

> Plaintiffs have failed to show how defendants furthered their allegedly fraudulent scheme by mailing the paychecks in question. According to plaintiffs, the mailed paychecks fraudulently omitted time that they had actually worked, and thus concealed from them the fact that they were not being fully compensated. But if the paychecks were as plaintiffs allege, they did not further defendants' fraudulent scheme; to the contrary, they made the scheme's discovery more likely . . . . Under plaintiff's version of events, the paychecks did not accurately reflect the number of hours worked, although they did accurately reflect the number of hours for which plaintiffs were paid . . . . [S]uch a state of affairs would alert the plaintiffs to the fraudulent scheme, not conceal it. . . . [H]ere, the plaintiffs . . . . know how many hours they have worked and how much money they have been paid. Merely by looking at the face of their paychecks, the plaintiffs can ascertain whether they are being underpaid. And because those paychecks put them on

---

[58] Warden v. McLelland, 288 F.3d 105, 114 & n.6 (3d Cir. 2002).

[59] United States v. Pharis, 298 F.3d 228, 233 (3d Cir. 2002).

[60] Schmuck v. United States 489 U.S. 705, 711 (1989) (internal quotation and citation omitted).

[61] No. 09-cv-40152, 2010 WL 3609535 (D. Mass. July 2, 2010).

notice of the alleged fraudulent scheme, plaintiffs have failed to state a cause of action under § 1961(c).[62]

Several courts have adopted the irrefutable logic of this analysis; this Court will follow in kind.[63]

The RICO allegations are also deficient because they do not meet the heightened pleading standard applicable to alleged mail fraud. RICO mail fraud allegations must "identify the purpose of the mailing within the defendant's fraudulent scheme and specify the fraudulent statement, the time, place, and speaker, and content of the alleged misrepresentation."[64] Plaintiffs' complaint does not identify with specificity the "speaker" (or in this case, the issuer) of the allegedly fraudulent paychecks, instead generally contending that "defendants" were responsible for the mailing. To meet the heightened standard, Plaintiffs must, at the very least, specify which of the 86 entities or two individuals mailed the paychecks.[65] Thus, Plaintiffs' RICO claims are dismissed.

---

[62] Id. at *3.

[63] See DeSilvia, 770 F. Supp. at 527; Manning, 2011 WL 796505 at *2 ("The mailings at issue are the paychecks, and plaintiffs have failed to show how those mailings furthered the alleged fraudulent scheme. To the contrary, they made the discovery of the scheme more likely."); Sampson v. Medisys Health Network, Inc., No. 10-cv-1342, 2011 WL 579155, at *6 (E.D.N.Y. Feb. 8, 2011) ("[I]f plaintiffs were repeatedly not paid for time worked in violation of the contract, as plaintiffs allege, the conclusory allegation that the payroll checks constituted a fraudulent scheme to conceal that fact will not support the RICO claim. If plaintiffs are aware of their hours worked, the payroll checks would put plaintiffs on notice of any fraudulent scheme, not conceal it."); Nakahata, 2011 WL 321186, at *5 (same); Wolman v. Catholic Health Sys. of Long Island Inc., 2011 WL 1741905, No. 10-cv-1326, at *5–6 (D. Mass. May 5, 2011).

[64] Annulli v. Panikkar, 200 F.3d 189, 201 n.10 (3d Cir. 1999).

[65] See also Nakahata, 2011 WL 321186 at *5 ("Considering how many defendants are named in these complaints, the plaintiffs must specify the relevant actors and provide an appropriate timeframe in order to provide appropriate notice.").

D.   STATE LAW CLAIMS

The only claims remaining (Counts 5 through 18) are based on Pennsylvania law. Although federal courts with original jurisdiction over a federal claim have supplemental jurisdiction over state claims that form "part of the same case or controversy," a court may decline to exercise supplemental jurisdiction over state law claims if "the district court has dismissed all claims over which it has original jurisdiction."[66] It is appropriate to decline the exercise of supplemental jurisdiction if the litigation is in its early stages, and where the complaint asserts federal question jurisdiction.[67] Here, these factors warrant dismissal of Plaintiffs' state law claims. If Plaintiffs should choose to replead their ERISA claims, however, they are directed to review this Court's previous holding regarding the preemptive effect of ERISA and the LMRA.[68]

E.   LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) directs the Court to "freely give leave when justice so requires."[69] Under this standard, courts will grant a party leave to amend unless the opposing party can establish prejudice, undue delay, bad faith on the part of the movant or futility of amendment. Because there has been no such showing here, Plaintiffs will be granted leave to amend their complaint.

---

[66] 28 U.S.C. § 1367(a), (c)(3).

[67] Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).

[68] See generally Lynn, 2010 WL 3656634.

[69] Fed. R. Civ. P. 15(a)(2).

## IV. Conclusion

For the foregoing reasons, the Amended Complaints in each of the six related actions at issue shall be dismissed. In dismissing Plaintiffs' claims, this Court joins at least seven other district courts that have dismissed substantially similar complaints as little more than an "aggregation of conclusory statements and general allegations."[70] Thus, Plaintiffs' counsel, who represent the Plaintiffs in each of those actions, are on sufficient notice that "[i]t is not enough to simply parrot, word-for-word, the 'vague and conclusory allegations' used 'in more than a dozen actions.'"[71] For the Parties' sake, and in the interests of reducing the substantial costs already associated with this litigation, the Court directs Plaintiffs' counsel to remedy the gaping deficiencies noted by this Court and others[72] if it chooses to replead.

An appropriate order for each case follows.

---

[70] Manning, 2011 WL 796505 at *2 (dismissing FLSA, RICO, and ERISA claims); see also Cavallaro, 2011 WL 2295023 at *7 (dismissing plaintiffs' FLSA and ERISA claims); DeSilvia, 770 F. Supp. at 548 (dismissing plaintiffs FLSA, RICO, ERISA, and state law claims); Sampson, 2011 WL 579155, at *10 (E.D.N.Y. Feb. 8, 2011) (dismissing Plaintiffs' FLSA, RICO, and state law claims); Nakahata., 2011 WL 321186 at *6 (dismissing FLSA, RICO, and state law claims in four related cases); Pruell 2010 WL 3789318 at *5(dismissing FLSA, ERISA, RICO and state-law claims); Wolman 2010 WL 5491182 at *7 (E.D.N.Y. Dec. 30, 2010); Cavallaro, 2010 WL 3609535 at *7 (dismissing plaintiffs' RICO claims); Camesi, 2010 WL 235123 at *2 (dismissing Plaintiffs' ERISA claims).

[71] Wolman, 2011 WL 1741905 at *3 (quoting Nakahata, 2011 WL 321186 at *6).

[72] See DeSilvia, 770 F. Supp. at 548 ("If plaintiffs choose to re-plead . . . plaintiffs should state more than conclusory statements unsupported by specific factual allegations and should structure their complaint within the boundaries of the Court's decision here."); Nakahata, 2011 WL 321186 at * 6 ("The very fact that this boilerplate complaint has been used, with identically vague and conclusory allegations, in more than a dozen action in New York and elsewhere is a vivid demonstrative of how not to plead.")